UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Vera Kuzmenko, | Case No. 24-cv-4381 (PAM/LIB) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| Warden, FCI Waseca, | |
| Respondent. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provision of 28 U.S.C. § 636, and upon Vera Kuzmenko's Petition for a writ of habeas corpus. [Docket No. 1].

For the following reasons, the Court recommends that Kuzmenko's Petition be **DENIED** and this action be **DISMISSED**.

In December 2015, a jury in the U.S. District Court for the Eastern District of California convicted Petitioner on multiple charges, including wire and mail fraud. See United States v. Kuzmenko, No. 11-cr-0210-1 (DAD/DB) (E.D. Cal.).[1] Petitioner was later sentenced to 168 months imprisonment to be followed by 36 months of supervised release. See United States v. Kuzmenko, No. 11-cr-0210-1 (DAD/DB) J. in a Criminal Case at 2 (E.D. Cal. Mar. 17, 2016).[2] Petitioner is currently incarcerated at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"). (See, e.g., Petition [Docket No. 1]).

In the present action, Petitioner's argument concerns so-called earned time credits

---

[1] Certain documents from Petitioner's criminal prosecution cited in this Report and Recommendation are absent from this action's docket. The Court may nevertheless take judicial notice of public court records. See, e.g., Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (citing United States v. Eagleboy, 200 F.3d 1137, 1140 (8th Cir. 1999)).
[2] Citations to filed materials use the pagination provided by the relevant District's CM/ECF electronic-filing system.

("ETCs") under the First Step Act. (See Pet. [Docket No. 1] at 6). Specifically, Petitioner argues that she has earned sufficient ETCs to require her transfer to prerelease custody or her immediate release to begin her term of supervised release. (See Id.). Under 18 U.S.C. § 3632(d)(4)(A),

> [a] prisoner . . . who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> (i)   A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> (ii)  A prisoner determined by the Bureau of Prisons [("BOP")] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

Under § 3632(d)(4)(C), ETCs "shall be applied toward time in prerelease custody or supervised release"; the provision further requires that "[t]he Director of the Bureau of Prisons [("BOP")] shall transfer eligible prisoners, as determined under [18 U.S.C. § 3624(g)], into prerelease custody or supervised release."

Here, Petitioner claims it is "incontrovertible" that she has earned "at least 1,020" ETCs. (Pet. [Docket No. 1] at 6; see also Exhibit [Docket No. 1-1] at 3). She argues that this number of ETCs required her "[c]onditional [t]ransition to [c]ommunity" by November 15, 2024. (Pet. [Docket No. 1] at 6).[3] Petitioner nevertheless remains at FCI-Waseca. As relief, Petitioner asks the Court to "issue an order directing the BOP to release Petitioner to prerelease custody, community placement, or supervised release forthwith." (Id. at 7) (capitalization amended).

As a preliminary matter, given how Petitioner phrases her request for relief, the Court

---

[3] The Court interprets this as Petitioner asserting entitlement to transfer to a residential-reentry center ("RRC") by that date.

2

distinguishes between prerelease custody and supervised release. Prerelease custody is a transitional phase of imprisonment (more on this point below) under the BOP's authority served outside a traditional prison setting, such as in an RRC or home confinement. See, e.g., 18 U.S.C. § 3624(c) (regarding prerelease custody). Supervised release, by contrast, is a postincarceration period of community supervision, overseen by the U.S. Probation Office, that takes place after a prisoner completes her custodial sentence. See, e.g., 18 U.S.C. § 3583 (addressing supervised release). Based on Petitioner's wording, the Court construes her request as seeking both an immediate transfer to supervised release and, alternatively, an immediate transfer to prerelease custody.[4]

The Court will first address Petitioner's supervised-release argument. Under 18 U.S.C. § 3624(g)(3), "[i]f the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment," then the BOP "may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of [ETCs]." (Emphasis added). Under this provision, regardless of how many ETCs Petitioner earns, the earliest her supervised-release period can begin is 365 days before the end of her BOP custody. That BOP custody includes both her time at FCI-Waseca and any time spent in prerelease custody, such as at an RRC.

Documents submitted by Petitioner show her projected release date, before applying ETCs, as September 16, 2027. (See Exhibit [Docket No. 1-1] at 2). Even assuming that ETCs will affect the portion of her sentence spent in prerelease custody, they could advance her release date by no more than one year, to September 16, 2026. The current record therefore leaves no doubt that

---

[4] The meaning of "community placement" in Petitioner's request for relief is unclear, but it presumably refers to either prerelease custody or supervised release. The Court thus assigns no independent significance to the Petition's use of that term.

Petitioner's ETCs do not entitle her to an immediate transfer to supervised release. The Court thus recommends denying the Petition to the extent it seeks such relief.

This leaves the issue of Petitioner's eligibility for transfer to prerelease custody. Here, the Petition faces a different problem: the claim is not cognizable in habeas. Petitioner brings the Petition under 28 U.S.C. § 2241. (See, e.g., Pet. [Docket No. 1] at 1). In relevant part § 2241 provides that, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because the statute addresses "custody," the U.S. Court of Appeals for the Eighth Circuit has held that habeas corpus is a proper remedy only when the prisoner "'is challenging the validity of [her] conviction or length of [her] detention.'" Spencer v. Haynes, 774 F.3d 467, 470 (8th Cir. 2014) (quoting Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam)); see Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) (stating that "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and that habeas's "traditional function . . . is to secure release from illegal custody").

The relief Petitioner seeks here—less time in prison, more in an RRC—would reduce her time in a traditional prison setting. For § 2241 purposes, though, transferring a prisoner from a prison to an RRC does not alter the fact that she is in custody; it merely changes the place of confinement. And so a petition seeking such a transfer does not challenge the legality of detention and is not cognizable in habeas. See, e.g., Hernandez v. Eischen, No. 24-cv-0027 (KMM/DLM), 2024 WL 4839827, at *5 (D. Minn. Oct. 28, 2024), report and recommendation adopted, 2024 WL 4839158 (D. Minn. Nov. 20, 2024); Shay v. Rardin, No. 24-cv-3418 (PAM/DTS), 2024 WL 4574391, at *1 (D. Minn. Sept. 19, 2024), report and recommendation adopted, 2024 WL 4573895 (D. Minn. Oct. 24, 2024). At root, Petitioner's claim here is a conditions-of-confinement claim.

4

When a pro se petitioner improperly raises such a claim in a habeas petition, the district court should either dismiss the action without prejudice or seek the petitioner's consent to recharacterize the claim as being brought under a more appropriate procedural vehicle. See, e.g., Spencer, 774 F.3d at 471; Fortner v. Eischen, No. 24-cv-1496 (JRT/LIB), 2024 WL 4903678, at *2 (D. Minn. Nov. 27, 2024) (citing Spencer). A court addressing the issue should "consider the potential detriment" of recharacterizing the petitioner's claim. See Spencer, 774 F.3d at 471; Elhers v. Smoot, No. 18-cv-1814 (ECT/LIB), 2019 WL 919078, at *4 (D. Minn. Jan. 22, 2019) (referring to Spencer), report and recommendation adopted, 2019 WL 917204 (D. Minn. Feb. 25, 2019).

Converting this action into a standard civil case would not benefit Petitioner. Even if one ignores the $350 statutory filing fee for civil actions—a potentially large expense—Petitioner likely cannot state a claim upon which relief could be granted. The core issue with her prerelease-custody claim is that the statutory provisions underlying it explicitly withdraw federal-court jurisdiction from BOP decision-making in the area. More specifically, Petitioner's argument here relies on 18 U.S.C. § 3624(c)(1), which requires the BOP, "to the extent practicable," to allow prisoners to serve part of their sentences in settings like an RRC. But § 3624(c)(4) then expressly states that "[n]othing in this subsection"—i.e., § 3624(c)—"shall be construed to limit or restrict the authority of the [BOP] under [§ 3621]."

Section 3621(b), for its part, grants the BOP authority to "designate the place of [a] prisoner's imprisonment" and explicitly states that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."[5] As a result, courts in this District have consistently held that federal courts lack jurisdiction to

---

[5] While the Administrative Procedure Act ("APA") allows federal courts to review certain challenges to federal decision-making, 18 U.S.C. § 3625 expressly exempts from APA review BOP decisions made under § 3621.

5

review BOP decisions regarding a prisoner's confinement location. See, e.g., Vang v. Eischen, No. 23-cv-721 (JRT/DLM), 2023 WL 5417764, at *5 (D. Minn. Aug. 1, 2023), report and recommendation adopted, 2023 WL 5403793 (D. Minn. Aug. 22, 2023); Cottman v. Fikes, No. 21-cv-2393 (SRN/TNL), 2023 WL 2482878, at *3 (D. Minn. Feb. 21, 2023), report and recommendation adopted, 2023 WL 2482879 (D. Minn. Mar. 13, 2023).

The Court concludes that recharacterizing Petitioner's prerelease-custody claim into a claim under a nonhabeas procedural vehicle would not benefit her. The Court therefore recommends denying this claim. Combined this with the discussion above regarding Petitioner's supervised-release claim, the Court thus recommends denying the Petition in its entirety.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Petitioner Vera Kuzmenko's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, [Docket No. 1], be **DENIED**; and

2. This action be **DISMISSED without prejudice**.

Dated: January 3, 2025

s/Leo I. Brisbois
Hon. Leo I. Brisbois
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).